Parker v. Alexander, case number 25487. Mr. Willoughby? Yes, Your Honor. Good morning. Good morning. May it please the Court. The district court's decision below took a statute in the CBA and the ASA that were designed to revive barred claims. It took those statutes, turned them on their head, and its decision determined that the statute actually bars revived claims. And this decision was contrary to three things, the text of the statutes of the CBA and the ASA, the intent of the statutes, and a significant body of case law, including decisions from the First Department and the Court of Appeals of the New York courts, that interpret the Home Rule law and hold that New York City is permitted wide discretion in legislating in the area of civil rights, regardless of whether or not that legislation creates new causes of action, sets different time frames to bring those causes of action, and sets additional penalties and remedies under the laws, even when those liabilities, penalties, statutes, limitations, et cetera, do not exist at the state level. And I'd like to discuss how the Court erred in these three areas, because in these three areas, the Court, these three areas undermine the Court's decision and require reversal. First, let's start with the Court's interpretation of the text of the statute. We keep hearing a lot from the lower court and also, of course, from our esteemed adversaries in both cases, frankly, about this notwithstanding any provision language. But these revival windows in the CBA and the ASA apply notwithstanding any provision of law which imposes a limitations period to the contrary. So we'd ask the Court to ask itself, what does to the contrary mean? That word literally means the opposite. A law to the contrary would be a law that would bar someone from filing a claim, a covered claim, within the revival windows created by the CBA and the ASA. The revival window in the GMBA is surely different, but it is not to the contrary. That revival window does not bar anyone from filing a covered claim. What legislative purpose, in your view, was served by the closing of the window in the state revival statutes? It served one of a statute of limitations. There's no question in our perspective that the revival statute created a statute of limitations and it created a period of time in which someone could bring covered claims. Then what is the purpose of a statute of limitations? Surely, for some crimes, there is not, and that reflects a judgment of the legislature. But this is not murder. Understood. For some crimes, there aren't some, although I'm unaware of a civil cause of action that would be covered by any state law, frankly, that wouldn't have a statute of limitations. But the purpose of the statute of limitations is certainly to put, with respect to the CBA and the ASA, and with respect to the purpose of that statute, it was to give people a window. That window is not endless, but the window was set up to allow people to bring claims that would otherwise be time-barred. And the text of the statute, in using the word contrary, indicates that the legislature would permit a locality. Well, allowing somebody to bring a claim that would otherwise be time-barred would be the evident purpose of the opening of the window. What's the purpose of closing the window? Your Honor, I would submit that it serves the same purpose as any statute of limitations. But just as, for instance, Your Honor, if the statute of limitations for a claim of assault, and I would go to, for instance, the case in Engleman, right? There's a lot of statute of limitations that have been set under the CPLR, including statute of limitations for assault, that obviously overlap very greatly with the statute of limitations that were set forth in the original GMBA. And the case in Engleman held not only that the GMBA isn't controlled by the statute of limitations set forth in 215-3, because the GMBA is of a different nature. It is one of a civil rights statute. It is not one that is designed to prevent assaults. But that Engleman case also made very clear that the statute of limitations in the GMBA initially also wasn't preempted by 214. And 214 at the time provided for a three-year statute of limitations for claims that arose under a statute, which the GMBA did. So the First Department of Appellate Division has already held that statutes of limitations, sure, there was a purpose to 215's one-year statute of limitations. There was a purpose to 214's three-year statute of limitations. But that didn't prevent the seven-year statute of limitations in the GMBA from being upheld as not preempted, because the GMBA, both the underlying statute and, frankly, the revival provision, are both within the nature of providing people remedies for civil rights violations and aren't covered by the CPLR's provisions. Why are you all resisting certification? We didn't actually – I don't – well, I would say, Your Honor, that certification, of course, is a part of the statute.     Let me ask you. Are you resisting certification? I'm not trying to hedge my bets here. We do think that the – Are you resisting certification? No. I would say no. I wouldn't – I'm not advocating for it affirmatively. Okay. But I'm not resisting it. If the Court deems it to be appropriate to certify, I certainly wouldn't point to anything that would say the Court would be somehow abusing its discretion or even making the wrong decision in certifying, just to be very clear.  I do believe that the text of the statute is clear because – and I believe also – These are issues of significant importance to the State of New York, to the city and so on, to state actors. And certification is meant to embody these federalism interests and to make sure that a federal court or a federal entity doesn't interfere or get it wrong with respect to these important legal and policy-related issues. So why – given the fact that this is all about state law and invokes or involves significant state-related policies, not federal, why shouldn't we certify? The only thing that I would point to is the consideration that this Court takes into account as to whether or not it can determine, based on existing appellate decisions in New York State cases, what the Court of Appeals would decide if this was in front of it. I would submit that the case in Engleman has been misconstrued, frankly, by both lower courts, both in the Black case as well as in the Parker case. It is very clear the decision in Engleman – Well, I'm not suggesting – And so it's very clear. The problem is when there is a lack of clarity that is precisely in connection with state law, that seems to me precisely to be the situation where we would want a clear answer. The beauty of certification is that it provides us with a clear answer so that we don't get it wrong, we don't meddle in it, and we just ask Albany, what is the answer? And it spits out an answer. Your Honor, I'm not advocating against certification, just to be very clear. And I feel part of my job up here is to advocate for the substantive correctness of the – No, I agree. I heard you do not resist certification at the beginning. Understood. But certainly, if the language of the statute – and I know my time is up – if the language of the statute combined with its legislative history and the Engleman decision doesn't lead the Court to a clear answer as to what the Court of Appeals would do, then certainly certification is a perfectly reasonable option for the Court to take. And my understanding is the New York Court of Appeals acts expeditiously and provides you with – provides Saul with an answer relatively quickly. I suppose the operative term could be relatively, but I'm not arguing against it even for time purposes as well, Your Honor. I do believe that the Court of Appeals, particularly given the purposes of the statute here – To help you, I would strike that from the record, but I can't strike that. I appreciate that. I can use all the help I can get. Are there other cases hanging fire here that would be either held up by certification or that would be resolved by certification? Or are we just looking at these two cases? No, there are a whole host of other cases that are pending, waiting for the decision in these two cases. The courts in those cases, with few exceptions, have stayed proceedings. So, candidly, it's unlikely that any of those cases are going to – so those cases may be delayed by a period of time if it's certified, right? If this court decides now, I would presume that those judges in those cases would say, okay, we're going to un-stay the cases and proceed. On the flip side, it would be disingenuous of me not to acknowledge that at the end of the day, the Court of Appeals will likely hear this issue because – That's why I'm asking because if there's a bunch of cases out there, I assume most of them are in state court. That's correct. It's mysterious to me why they would stay their cases pending a decision by a federal court on a matter of state law. Well, it is curious – I'm not asking you to explain what they're doing. It just seems odd. Well, I think that a lot of – most of those cases are stayed by agreement of the parties. In fact, I believe that all of them are stayed by agreement of the parties. The only case that I'm aware of that's not entirely stayed right now is one where the plaintiff objected to the stay and partial discovery is proceeding. That case happens to be in front of Judge Clark, so perhaps it's not surprising that she moved that case forward at least to some degree. My interpretation is that those courts were hoping to have some clarity within a reasonable period of time so that those claims, which aren't going to essentially stale out while they're waiting – So theoretically there's a whole bunch of claims hanging fire while we – while these cases get decided. That's correct. If the court – again, I'm putting myself in the heads of those judges. I suspect that if the court were to rule substantively on this, those cases would move forward. Those cases, if we're going out into the future then, would almost certainly get appealed up to the court of appeals because – between our own resolution of the issues before us here and the New York court of appeals. And meanwhile, you have all of these cases that are pending in federal court. They get it wrong because we've gotten it wrong, and then what happens? There's always the option we get it right. Well, there is always that. Yeah, I was going to – I mean, not to – I guess you were trying to help me out. I suspect that this court will get it right, as will the court of appeals, and reverse Parker. Perhaps I can ask, since you're being helpful to us in an administrative sense, counsel, do you have a sense of the universe of cases that we're talking about, including those in the state court system? There's about – there's between one and two dozen. I believe at this point around 20 that are currently stayed pending the determination of either this or if it's certified. It might be helpful with the help of Mr. Michel, who's still here. Is that you, Mr. Michel? And also, Mr. Williams, to provide us with a letter enlisting all those cases, both in state court and federal court, obviously, that might be impacted by whatever decision we make or that the New York court of appeals makes. And if you – I know it's the holiday season, so maybe – well, I can't say next Friday. As soon as you can. As soon as you can. Is that good? January 15th, if I have to get it right. Yeah, January 15th, this is fine. No problem. I will do that. And can I – in connection with your clerical functions on behalf of the court, which would be greatly appreciated, could you make sure you give us in that letter an indication of – a precise indication of the court and the tribunal where these cases are pending? And it may be that it will await action by this panel to give notice to them. I don't know. Perhaps my colleagues have a view as to what such a list would do. Should everybody be advised that we have received such a list? I'm happy, certainly, Your Honor, to provide the court, so maybe perhaps even the docket as well as the judge. We'll be comprehensive in our submission, and Your Honors can obviously do with it what you want. We'll figure that out. Yes. Okay. Thank you very much. Thank you. Mr. Williams. Good morning, Your Honors. Good morning. May it please the Court. With the thoughts and the backdrop of your certification question, which I will address, I'd like to take a shot at trying to persuade this Court that the statutory language on its face is clear, which is one of the guidelines or criteria that the New York State's Court of Appeals has set out for determining whether or not certification is necessary. Let me point out two factors that distinguish the Harker case from the Doe v. Black case. The ASA statute was enacted after the BGMPL. So the State legislature, and I'm making the assumption and submitting to the Court, that they were well aware of the existence of the BGMPL at the time that they enacted the revival statute, the ASA. In addition, if you look at the legislative history at the time that the ASA was being promulgated, Senator Brad Holman stated during the legislative commentary, during the discussions concerning the statute, the ASA, that it can only take place within a one-year window. And the one-year window is November 24th, 2022, to November 23rd, 2023. The BGMPL extends this, and this is a classic case, as my colleague, Mr. Michel, pointed out earlier, of conflict preemption. The ASA, if you look at the language of the statute, not only says, provides a period of limitations, as classically is done for statute of limitations, by using the language, notwithstanding any provision of law which imposes a period of limitations to the contrary, which I would submit to this Court as very clear. But it also confers a right of repose upon defendants by using the language, not later than. And to me, that would be — So with respect to this, not later than, as evidence of the statute of repose, or an indication that we're really talking about repose, not limitation, what's the best New York Court of Appeals case on that? So the best Court of Appeals case on it — New York Court of Appeals case. There's no case that I'm aware of that deals with revival statute versus revival statute. Well, there you go. So now we can move on to certification. Well — If we have no case, if that is the answer, and I think a central part of your argument relies on this concept of repose, frankly — It does. Then why would we not certify? Because the Court of Appeals — I mean, repose is a significant idea or concept and is — insofar as it's a matter here of State law, it's significantly important to the State. It is, but I would just — I would submit to the Court that the language of the ASA itself is very clear, which is one of the criteria. I understand that, you know, in excess of caution, I understand Your Honor's concerns and questions, but what is unclear about the ASA? It clearly sets forth that it's a statute of repose because of the not later language — not later than language combined with the notwithstanding any other provision contrary to law. You also have — before I talk about field preemption a little — somewhat, I don't — what I'm not seeing, and maybe I'm missing something in Your Honor's question, I understand that it might be more cautious to certify this. But the statute itself is pretty clear, is our position. Let me ask you this. Go ahead. Both of the State statutes say that the window opens not earlier than a certain date. We've all been focusing on the end, on the closing of the aperture. But both of the State statutes say that the window opens no earlier than six months after enactment. Am I correct that at least one of those statutes provides that the window doesn't open during a time that the city statute does open? You're absolutely correct, Your Honor. It's not easy to get this straight, but that would be an absolute contradiction. It is. So — and I should have pointed it out. Thank you for raising that point. I'm not sure I understand this. You can explain it. I will. So the ASA, the period of revival begins November 24th, 2022. No earlier than that. That's right. The VGMPL, the revival period, opens up March 1st of 2023. So even under — on the front end, there's a conflict between the two statutes. And the other point I would make to this Court is that the ASA — I mean, sorry, the VGMPL can't create a revival scheme that directly conflicts with a State statute like the ASA. And it does, which is why — Is there a difference — Go ahead. Is there a difference between something contradicting and something conflicting? I realize we're just — you know, that's metaphysical, but — Well, I would — in this case, I would submit that it's classic conflict preemption. Not only do you have on the back end, with regard to the not later than, but on the front end, there's a conflict as well. And the statute — and, Your Honor, Judge Lohier, I would just point out that the statute is pretty clear in terms of the language used by the statute.  I'm sorry to harp on your words, but pretty clear is the problem for me. I probably shouldn't have used pretty. I should have used clear. When we can get the clarity — and, look, I appreciate the argument. You say it's clear. Mr. Wellman says it's clear. And these arguments relating to the clarity of the text point us in two different directions. And whatever history exists, you mentioned the Holman and so on. I don't know that it's especially helpful. And that's — I mean, it's not even a point. It's really a question. Why are both sides resisting? Am I missing something? Other than, as it relates to expense, time, the delay associated not only with this case, but also with the cases behind it, which I'll give you an opportunity to say, yes, you'll help with this letter. Well, absolutely. We ourselves, in my firm, have about 30 of these cases just dealing with the Alexanders. So we're well familiar with the issue. Could you fill me out? How, if at all, does the terms of the home rule law as a relationship between the state and the city, does that give any clue as to how to read these various statutes against each other? You know, I think so. Well, I'll just point — go to a case that my colleague, Mr. Willerman, discussed, Engleman v. Roth. That is statute — Give a cite to it, if you want. Absolutely, Your Honor. It's 194 A.D. 3rd, 26. I think the relevant section of the page is 32. It's First Department, 2021. Thank you. And what I would point — what I would try to distinguish between Engleman v. Roth, which is a First Department case, is the ASA and the VGMPL are revival statute versus revival statute. The Engleman v. Roth case was CPR 213 and the VGMPL. And so it was a state statute of limitations versus the VGMPL. And there, I would submit to the Court that the Engleman case is self-limiting because it distinguished the VGMPL's 70-year statute of limitations from a law that merely extends the statute of limitations for a particular class of assaults, whereas here we have two directly competing statutes, as Your Honor so astutely pointed out, Judge Jacobs, both on the front end and on the back end. And so if you look at home rule, I don't — I would submit to the Court that Engleman v. Roth is comparing apples to oranges to this — to this matter, Park v. Alexander, where you have revival statute versus revival statute, and the state's revival statute is in direct conflict with the — with the ASA. And to Judge Zollier's point, the fact that it's in direct conflict on the front end as well as the back end would — I would submit to the Court demonstrates that the statute's — the ASA is clear on its face and the state and the city law, the VGMPL, can't create any type of revival scheme that conflicts with it, and it does indeed conflict with it with regard to timing. But why did — it seems to me that the notwithstanding any provision of law wording also operates to make sure that if the city of New York or the city of Yonkers or Rochester did not extend this window, that it would be extended notwithstanding any other provision of any other statute of limitations. The city statutes itself. Every city would have to yield to the state. And that's how I read notwithstanding as an important part, that it is saying that if there's a city that does not extend it, or a town for that matter, that it's extended notwithstanding. So you're reading it as the notwithstanding language is permissive, allows the city — I think it may well do both. But it certainly would make sure that cities that did not extend the statute of limitations of their local violence against women laws would have to — would be extended in any event. Understood. But would you read that in conjunction with the not later than language, and then when you read them together? One says not later than, and the other says not earlier than. So it looks like this language is solidifying some uniform principle for how this extension is going to work. On the front and back. On the front and back end. I would agree, but I would agree that the interpretation would favor the — I'm not sure what Your Honor is suggesting exactly. I would, based on what you just said, I would interpret that in favor of the appellees here. It would be my position. I understand. Okay. I wouldn't expect anything less. Unless there's any other questions, thank you for the time and the additional time, Your Honor. Thank you. Thank you. I'm sorry. So just to ask the same question, you are also not — you do not oppose certification, although you'd much prefer that we decide. Is that correct? Would prefer that you decide, but I'm fine if I have to go to New York State Court of Appeals. One learned group of judges to another learned group of judges. Not a problem. Which is more learned, Mr. Williams? Don't answer that question. Equally.  Thank you, Your Honors. Mr. Williams. Your Honors, I'll be brief. Just two or three points. As far as the decision in Engleman, which was decided by the presiding judge, Rolando Acosta, at the time that that decision was made, he was the presiding judge. The distinction that my colleague just referenced between the GMBA and a statute that creates a statute of limitations for assault claims is all in the context, in that case, of the lower court's decision that the GMBA did create a subclass of assault claims. And when the First Department took the case, it said that the GMBA did not create a subclass of assault claims. That's why it wasn't covered by 215-3. The revival window no more creates a subclass of assault claims or sexual assault claims than the GMBA's original purpose, which is a civil rights statute. And so it is no more preempted by 215-G and J, insofar as those set forth statute of limitations that pertain to a subclass of assault claims. But one thing that Engleman did is go one step further, which is analyze CPR-201, because on the issue of whether or not CPR-214 preempted the GMBA's initial window, the court held that in — so CPR-201, which says that all of the Article II statute of limitations apply unless a different time is prescribed by law. And the First Department held in Engleman that the city's law, the VGM, did prescribe a different time, the seven years, that was covered by Rule 201. In other words, the seven year is the exception. It is the other time that is prescribed by law that 201 recognizes as superseding the CPR statute of limitations. And the reason that I say that, and the language is very important, inasmuch as the VGM itself provides a different time than that prescribed by 214-2, the time prescribed in the VGM controls through 201. You could replace the language in that. You could replace VGM with the revival window, and you could replace 214-2 with 214-G and J, and you would have the exact controlling holding in this case. But isn't there a difference between saying unless there's another provision of law that provides and saying notwithstanding any other provision of law? But 201 — 201 modifies the entirety of Article II. And also, with respect — even if you're looking specifically — So 201 modifies the entirety of what? Of Article II, all of the statute of limitations in Article II. So, in other words, any circumstance in which there's another time prescribed by law, which the First Department has held, includes by city law, right? Because the defendants in this case said, well, that only is if it's a State law that applies a different time. Not so. The decision in Engleman says the city law is a law that prescribes a different time pursuant to 201. That modifies everything in Article II, including 214 at the time and including 214 now. And the other point that I would like to make briefly is that on — well, I'm out of my time. Let me extend it by asking a question. Yeah. Looking at the text of the CVA, the passage that begins with notwithstanding and ends on effective date of this section, how — assuming the State wanted categorically to make this preemptive of any city provision that had a different window, how would they change this language? It would — What would they do to make it — The word — first, the easiest thing would have been to change the word contrary to the word different. The second point that I would make, because contrary means opposite, and that's important, because in a colloquial sense, contrary can mean all sorts of things. But when you're looking at what the literal definition of contrary means, it means opposite. And in this case, it would mean a law that would prohibit you from filing, which — What else? Would that — would that do it? I think that that would do it, which raises an interesting question that Your Honor — I think it was actually Your Honor raised on the front end. Initially, Your Honor raised it. If there's any argument that any part of the VGM is preempted, it's the part of the VGM that didn't allow people to bring claims during the beginning part of the opening revival window. If any part is — I mean, you would concede that that is preempted because this says you can't — you can't bring these claims. Exactly. The VGM prior to the revival window said you couldn't bring claims at a time when the CBA said you could. That is a contrary law. That aspect of it probably is not at issue in this case, but probably should be preempted. What other wording in this CBA section would have to be changed in order to make this — in order for the city statute to succumb to conflict preemption? I think what I said as far as different, that would probably — that might be sufficient. The other thing I would mention, though, and actually it's important, the CBA and the ASA are not the same statute, literally and also in what they do. I mean, the CBA is not just a revival statute. It has a whole host of other provisions, and it's not a standalone survival statute. The ASA, for the most part, is. And the important point, and I'll obviously cede unless you cut me off beforehand, is that the ASA only — the revival window only revived claims that were time-barred. And as counsel pointed out, the GMVA revival window had already passed, and all of those claims upon its passage were revived. So those claims under the GMVA were not time-barred when the ASA went into effect. But you can only — you can only revive something that's dead. Understood. But my point is that ASA — the GMVA wasn't dead at that point. So the language of the ASA only purports to apply to claims that are time-barred. Under the GMVA, those claims had already been revived. To be clear, the window hadn't opened, but the claims were revived. And the Jones case — The claims were revived as of when? Literally as of the enactment of the law.  That's the language. And that's the same language in the CVA and the ASA that was interpreted by the Court of Appeals in the Jones case that, Your Honors, that this Court did certify, which held that that was not a defense from a statute of limitations perspective, the fact that the window hadn't opened yet. So in other words, the GMVA revival window revived the claims prior to the passage of the ASA, and the ASA doesn't even purport to revive claims that were already revived. I forget the argument. Let me just — one more housekeeping matter. So if we were to certify the question whether the VGM is preempted by the CVA and the ASA, with some bells and whistles to that, to the New York Court of Appeals, would the answer to that either way resolve this appeal? In other words, are there any other — Secondly, are there any other issues that we would need to resolve? And I'll ask — I'll give Mr. Milton an opportunity to answer the same question. And Mr. Michel. I believe that all of — I mean, for instance, the point that I just made, I think is encompassed in the question that you would have asked. So broadly speaking, the issue whether or not the CVA or the ASA or them collectively preempt the GMVA's revival window, that would resolve the issue in this case. Mr. Williams, do you agree with that? I do. Okay. And Mr. Michel, in case number 25564? I think I agree if you certify that in our case. Okay. So you would agree if you certify that in 25564. Great. Thank you very much. Thank you. Judge Gavadas, any questions? Fine. Thank you. Thank you very much. Thank you, Your Honors.